IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00023-KDB-DCK

| | |
|---|---|
| KEON SCOTT, | |
| Plaintiff, | |
| v. | **ORDER** |
| OCCUGUIDES USA, LLC, | |
| Defendant. | |

**THIS MATTER** is before the Court on the Defendant's Motions for Summary Judgment and for Sanctions for failure to supplement discovery. (Doc. Nos. 46, 49). The Court has carefully considered the motions, the parties' briefs and exhibits, other relevant pleadings of record, and the arguments of the parties at the June 1, 2023, hearing. For the reasons discussed below, the Court will grant the Motion for Summary Judgment and deny the Motion for Sanctions as moot.

## I. FACTUAL BACKGROUND

Occuguides USA, LLC — an employment placement business — hired Plaintiff on July 30, 2020 and placed him with Kamps Pallets. *See* Doc. No. 49-2. Beginning in October 2020, Plaintiff began complaining to supervisors that he was not being paid appropriately *Id*. When Plaintiff expressed concerns about his pay, Kamps General Manager, Jason Brasher, investigated his concerns and determined the time clock was functioning properly. *Id*. Brasher explained to Plaintiff that he was likely misreading his paystubs and was never paid less than he was owed. *Id.* at ¶¶ 3, 9, 10, 11, 12 and 13. Plaintiff allegedly responded with profanity directed at his supervisors and other disrespectful or abusive behavior. *Id.* at ¶¶ 2, 3, 4, 5 and 6. Plaintiff also allegedly refused

1

direct orders, had explosive outbursts in response to instruction, and defied his supervisors saying they "could not tell him what to do." *Id*. at ¶ 6.

As a result of his behavior, Kamps disciplined Plaintiff multiple times. On October 21, 2020, Kamps suspended him for a day. *See* Doc. 49-2. Plaintiff was again disciplined on November 10, 2020, and suspended for a day. *Id.* On November 23, 2020, Plaintiff was given a final written warning for insubordination, profanity, and abusive and derogatory language directed at his manager. *Id.* Plaintiff was warned he would be terminated if his abusive and insubordinate behaviors continued. *Id*.

Following this final warning, Plaintiff, Mr. Brasher, and Walter Martin, Plaintiff's immediate supervisor, met at a Bojangles to discuss his pay concerns. *See* Doc. No. 49-2 ¶ 9. Brasher testified that he selected this site because "it was expected that Scott would respond with another disruptive and disrespectful outburst" and he did not want Plaintiff to "make a scene at the facility." *Id*. At this meeting, Brasher again attempted to inform Plaintiff that he was paid properly. Plaintiff responded by allegedly "yelling about his pay, pounding the table and using profanity." *Id.* at ¶ 10. Plaintiff then demanded another review of the paystubs, which Brasher declined to perform. *Id*. Plaintiff continued to yell about his pay and sought to "physically intimidate" Brasher and insulted his intelligence. *Id*. Brasher responded by ending the meeting. *Id*. at ¶ 12. Still, Brasher did not fire Plaintiff after this meeting and agreed to meet with him again. *Id*. Plaintiff and Brasher met once again on January 6, 2021. *Id*. at ¶ 13. Plaintiff repeated his prior behavior which included "throwing checks, [and] yelling ." Accordingly, Brasher fired Plaintiff. *Id*.

Plaintiff filed his Complaint on March 6, 2022, asserting claims for: (1) Retaliatory Discrimination; (2) Wrongful Discharge; (3) Vicarious Liability; (4) Negligent Hiring, Retention, and Supervision; (5) Unjust Enrichment; and (6) Breach of Contract. *See* Doc. No. 1. Plaintiff was

2

initially represented by counsel but is now proceeding *pro se*. *See* Doc. No. 19. On January 18, 2023, this Court entered an Order directing Plaintiff to supplement his discovery responses on or before February 10, 2023. *See* Doc. No. 28. Despite the extension of the deadline, Plaintiff has failed to fully supplement his discovery responses. *See* Doc. No. 46-1. As a result, Occuguides has moved for sanctions. *See* Doc. No. 46. Additionally, Occuguides has moved for summary judgment on all of Plaintiff's claims. *See* Doc. No. 49. Both motions are ripe for the Court's consideration.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019).

A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to

3

support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores,* 888 F.3d at 659 (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)); *see Modern Mosaic* at *2. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### III. DISCUSSION

Occuguides argues that that all of Plaintiff's claims suffer from one or more legal defects that require entry of summary judgment in its favor. In his various responses, Plaintiff has accused Occuguides of lying and "sabotaging" his character. *See* Doc. Nos. 54, 56. Plaintiff also contends that he has provided all required discovery and that he has a two-hour recording that supports his claims. Doc. No. 54. The Court will briefly address the parties' discovery dispute and then each claim in turn.[1]

The purpose of discovery is to provide a "mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In seeking discovery, parties must act cooperatively and in good faith. *See Crisp v. Allied Interstate Collection Agency*, No. 1:15cv303, 2016 U.S. Dist. LEXIS 62807, at *10 (M.D.N.C. May 12, 2016). Where a party is proceeding *pro se*, the responsibility for the action, and thus discovery, rests exclusively with the *pro se* party. As such, a party's *pro se* status does not exempt him from compliance with discovery obligations. *Id*.

The Court acknowledges the difficulty that Plaintiff's circumstances[2] causes in providing adequate discovery. However, the Court cannot excuse him from his discovery obligations. Based on the record before the Court, it appears that Plaintiff has failed to comply with the Court's order compelling him to supplement his discovery responses. *See* Doc. Nos. 28, 39, 46. This failure to

---

[1] The Court need not, and will not, address the vicarious liability claim. It is well settled that that "[v]icarious liability is not a stand-alone cause of action," but is instead a mere "derivative method of assigning liability to a party." *Bond v. Rexel, Inc.*, No. 5:09cv122, 2011 U.S. Dist. LEXIS 45058 (W.D.N.C. Apr. 26, 2011) Thus, Plaintiff cannot state a claim for "vicarious liability."
[2] Plaintiff is currently incarcerated for conduct unrelated to this matter.

5

provide discovery not only prejudices Occuguides' ability to defend itself but prejudices Plaintiff's ability to prove his claims. In sum, the Court recognizes the challenges of Plaintiff's unique situation, but he has failed to comply with the Court's order to supplement discovery. Nevertheless, as the Court noted at oral argument, its focus on the pending motions is on the merits as discussed below and the Court is ultimately not penalizing Plaintiff because of his failure to provide discovery.

a) <u>Retaliatory Employment Discrimination Act (REDA) and Wrongful Discharge Claims</u>

The North Carolina's Retaliatory Employment Discrimination Act provides that no person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to file "a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to [the Occupational Safety and Health Act of North Carolina or the North Carolina Workers' Compensation Act]." *See* N.C. Gen. Stat. § 95-241(a). To prevail on a REDA claim, a plaintiff must show that (1) he exercised his right to engage in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between his exercise of the protected activity and the retaliatory action. *Edwards v. PCS Phosphate Co.*, *Inc.*, 812 F. Supp. 2d 689, 693 (E.D.N.C. 2011) (citing *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 580 S.E.2d 757, 762 (N.C. Ct. App. 2003)). Moreover, the "protected activity" requirement under REDA is met only when employees pursue or threaten to pursue a claim "outside any internal grievance systems that their employer has developed." *Hadley v. Duke Energy Progress, Inc.*, 2016 U.S. Dist. LEXIS 34643 *23 (E.D.N.C. 2016) *aff'd* 2017 U.S. App. LEXIS 2176 (4th Cir. Feb. 7, 2017). Complaining internally does not suffice. *Id*. citing *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 26-28 (2012).

6

Here, Plaintiff has offered no admissible evidence that he pursued an inquiry about his compensation outside of Occuguides' internal grievance system. In his Interrogatory responses Plaintiff states that he brought his wage concerns to his "supervisor, plant manager, human resources, and the corporate office." *See* Doc. No. 49-3, p. 14. Plaintiff contends in his response to the Motion that he did make an outside complaint but has provided no admissible evidence to support that assertion. *See* Doc. No. 54. Absent evidentiary support, Plaintiff's assertion in a legal brief does not create a genuine dispute of material fact. *See Smith v. Vilsack*, 832 F. Supp. 2d 573, 580 (D. Md. 2011) ("even a *pro se* party may not avoid summary judgment by relying on bald assertions and speculative arguments."). Consequently, Occuguides is entitled to summary judgment on Plaintiff's REDA claim as a matter of law because there is no proper evidence in the record of Plaintiff complaining about his wages outside of the company.

The failure of Plaintiff's REDA claim also dooms his wrongful discharge claim. Under North Carolina law, the viability of a wrongful discharge in violation of public policy claim based on REDA depends upon the validity of the REDA claim. *See Smith v. Computer Task Grp., Inc*., 568 F. Supp. 2d 603, 621 (M.D.N.C. 2008) (citing *Johnson v. Pepperidge Farm, Inc*., 23 F.3d 401 (4th Cir. 1994)). Therefore, because the Court has determined that no REDA liability exists, Plaintiff's wrongful discharge claim must also fail as a matter of law.

b) <u>Negligent Hiring, Retention, and Supervision</u>

To succeed on a claim for negligent hiring, supervision and retention under North Carolina law a plaintiff must prove: (1) the specific negligent act on which the action is founded; (2) incompetency, by inherent unfitness or previous specific acts of negligence, from which incompetency may be inferred; (3) either actual notice to the master of such unfitness or bad habits, or constructive notice, by showing that the master could have known the facts had he used

7

ordinary care in "oversight and supervision,"; and (4) that the injury complained of resulted from the incompetency proved. *See Walters v. Lumber Co.*, 163 N.C. 536, 541, 80 S.E. 49, 51 (1913); *see also Smith v. Privette*, 128 N.C. App. 490, 494-495 (1998). The Fourth Circuit has "interpreted North Carolina law to require a common-law tort to [underlie] a negligent retention and supervision claim." *Johnston v. Leith, Inc.*, 2011 WL 1770434 at *7 (E.D.N.C. May 9, 2011) (citing *McLean v. Patten Cmtys. Inc.*, 332 F.3d 714, 719 (4th Cir. 2003)); *Driskell v. Summit Constr. Group, Inc.*, 325 F. Supp. 3d 665, 677 (W.D.N.C. 2018). Here, the only claims asserted by the Plaintiff that alleged tortious conduct are the REDA and wrongful discharge in violation of public policy claims. These claims are not common-law torts and, in any event, have already been decided in favor of Defendant. Plaintiff therefore has not asserted a valid tort claim against Occuguides to serve as the basis for the negligent hiring, retention, and supervision claim. As a result, this claim must fail as well.

c) <u>Unjust Enrichment</u>

Unjust enrichment is "a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556, *rehearing denied*, 323 N.C. 370, 373 S.E.2d 540 (1988). To state a claim for unjust enrichment, a party must allege: "(1) it conferred a benefit on another party; (2) the other party consciously accepted the benefit; and (3) the benefit was not conferred gratuitously or by an interference in the affairs of the other party." *Worley v. Moore*, 2018 NCBC LEXIS 114, at *25 (N.C. Super. Ct. Nov. 2, 2018) (citing *Se. Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002)). "If there is a contract between the parties, the contract governs the claim, and the law will not imply a contract." *Se. Shelter Corp., 154 N.C. App.* at 330, 572 S.E.2d at 206. However, a plaintiff may plead unjust enrichment as an alternative claim to a breach of contract claim "even if [the] plaintiff may not ultimately be able to

8

prevail on both." *James River Equip., Inc. v. Mecklenburg Utils., Inc.*, 179 N.C. App. 414, 419, 634 S.E.2d 557, 560 (2006). While Plaintiff was permitted to plead unjust enrichment as an alternative claim, at this point in the litigation the existence of an employment contract is not disputed. *See* Doc. No. 1, ¶ 69; Doc. No. 49-1. Accordingly, Plaintiff's unjust enrichment claim fails as a matter of law.

    d) <u>Breach of Contract</u>

Under North Carolina law the elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). Plaintiff alleges that Occuguides breached his employment contract by failing to pay him "production or overtime" pay and by not hiring him as a "permanent" employee. *See* Doc. No. 1, p. ¶¶ 68-76. Occuguides argues that Plaintiff's breach of contract claim fails because it is preempted by the Fair Labor Standards Act under the Supremacy Clause of the United States Constitution.

In *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007), the Fourth Circuit found that a North Carolina common law breach of contract claim that sought unpaid wages and other remedies that were "more generous than those provided by the FLSA enforcement scheme" was preempted because Congress prescribed exclusive remedies in the FLSA for violations of its mandates. Specifically, it held "[b]ecause the FLSA's enforcement scheme is an exclusive one, we further conclude that the Class Members' FLSA based contract . . . claims are precluded under a theory of obstacle preemption." *Id.* at 194. Plaintiff is seeking payment of unpaid overtime wages. *See* Doc. No. 1-7 ¶¶ 69-70. Accordingly, Plaintiff's breach of contract claim is foreclosed under

*Anderson*.³ Moreover, even if Plaintiff's breach of contract claim was not foreclosed under *Anderson*, there is no evidence before the Court to support this claim and contracts that attempt to provide for permanent employment are deemed unenforceable. *See Kurtzman v. Applied Analytical Indust.*, 342 N.C. 329, 332 (1997).

**IT IS THEREFORE ORDERED THAT** Defendant's Motion for Summary Judgment, (Doc. No. 49), is **GRANTED** and Defendant's Motion for Sanctions, (Doc. No. 46), is **DENIED** as moot. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED**

Signed: June 7, 2023

Kenneth D. Bell
United States District Judge

---

³ The Court notes that this holding is consistent with its previous decision in *In re Lowe's Cos.*, 517 F. Supp. 3d 484, 498 (W.D.N.C. 2021). *In re Lowe's*, the Court addressed the question of whether states could enact parallel wage and hour laws. Here, Plaintiff does not bring any claims under the FLSA or North Carolina's various wage and hour and payday statutes. Rather, he only brings a common-law tort claim for breach of contract.